IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC MCGUIRE, | ) | |
| | ) | Civil Action No. 13-1330 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | United States District Judge |
| THE BOROUGH OF WILKINSBURG, | ) | |
| DONALD HAMLIN, in his official and | ) | |
| individual capacities, MARK WILSON, | ) | |
| in his official and individual capacities, | ) | |
| | ) | United States Magistrate Judge |
| | ) | Cynthia Reed Eddy |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

**Cynthia Reed Eddy, United States Magistrate Judge**

**I.    RECOMMENDATION**

This is a civil rights action brought by Plaintiff Eric McGuire pursuant to 42 U.S.C. §§ 1983 and 1985(2) and the Fourth and Fourteenth Amendments, as well as pendent state common law torts against the Borough of Wilkinsburg ("Wilkinsburg" or "The Borough") and two of its police officers, Donald Hamlin ("Officer Hamlin") and Mark Wilson ("Officer Wilson"). (Am. Compl., ECF No. 36). Pending before the Court is the Defendants' partial motion to dismiss all of the claims asserted against Officer Wilson and Wilkinsburg. (Def.s' Mot., ECF No. 26).[1] As to Officer Hamlin, however, the motion only seeks dismissal of the conspiracy claim brought under § 1985(2).

---

[1] The Court notes that Defendants filed an Errata regarding this motion on September 22, 2014 attempting to correct an incomplete sentence in the motion. (ECF No. 31). For purposes of this Report and Recommendation, when referring to the pending partial motion to dismiss, the Court will only cite to the motion at ECF No. 26.

1

In accordance with the following report, it is respectfully recommended that this motion be granted in part and denied in part, and that Plaintiff be given leave to amend his pleading.

## II. REPORT

### A. RELEVANT FACTS AND PROCEDURAL BACKGROUND

On the night of October 1, 2011, Officers Hamlin and Wilson were on duty in Wilkinsburg in separate marked police cars. (Am. Compl. ¶ 11, ECF No. 24). Around 11:00 p.m., Officer Hamlin received a dispatch call reporting that a possible burglary occurred at 913 Ross Avenue. (*Id.*). Officer Hamlin was not informed as to the number of suspects, their physical description, their mode of transportation, or their direction of travel. (*Id.*). Officer Hamlin began following Plaintiff and his friend, who were walking along the 900 block of Ross Avenue. (*Id.* at ¶¶ 10, 12). Officer Hamlin called Officer Wilson for back-up. (*Id.* at ¶ 13). Once Officer Wilson arrived, Officer Hamlin parked his vehicle on the curb near Plaintiff and his friend. (*Id.*). Officer Hamlin exited his vehicle and instructed Plaintiff and his friend to put their hands on his vehicle. (*Id.* at ¶ 14).

As Plaintiff began approaching Officer Hamlin's vehicle in accordance with these directives, Officer Hamlin deployed his Taser gun, striking Plaintiff in the back and causing him to fall face-first onto the street. (*Id.*). Officer Hamlin then jumped on Plaintiff, putting his knee in Plaintiff's back, and handcuffed Plaintiff. (*Id.*).[2] As a result of this incident, Plaintiff was transported to UPMC Mercy Hospital to have the barbs from the Taser gun removed from his body and to receive treatment for neck and back injuries. (*Id.* at ¶ 15).

On that same date, Officer Hamlin criminally charged Plaintiff with carrying a firearm without a license and unlawful possession of a firearm. (*Id.* at ¶ 16). These charges were

---

[2] The amended complaint does not contain any factual allegations regarding Officer Wilson's involvement or location during this arrest. Rather, it only contains conclusory statements, unsupported by facts. *See, e.g.,* (Am. Compl. ¶¶ 8, 30, 44, ECF No. 24).

entirely dismissed on the grounds that Officer Hamlin did not have reasonable suspicion to conduct an investigative detention of Plaintiff, and that the use of the Taser converted the detention into an unlawful arrest, which was done without probable cause. (*Id.* at ¶ 17). Plaintiff alleges that Officers Hamlin and Wilson conspired to file the above charges against him to "cover-up" their unlawful conduct. (*Id.* at ¶¶ 26-30).[3]

This action was originally initiated by Plaintiff as a *pro se* party in September of 2013. (ECF No. 4). Plaintiff retained counsel in this matter and amended his complaint nearly a year later on August 15, 2014. (ECF Nos. 21-24). The amended complaint consists of the following five counts: (I) Excessive Force in violation of § 1983 and the Fourth and Fourteenth Amendments against all Defendants; (II) False Arrest in violation of § 1983 and the Fourth Amendment against all Defendants; (III) Conspiracy under § 1985(2) against Officers Hamlin and Wilson; (IV) Intentional Infliction of Emotional Distress under Pennsylvania law against Officers Hamlin and Wilson, and (V) Assault and Battery under Pennsylvania law against Officer Hamlin. (Am. Compl., ECF No. 24). On September 2, 2014, the Defendants collectively filed the pending partial motion to dismiss (ECF Nos. 26) and brief in support thereof (ECF No. 27). Plaintiff responded to said motion on October 23, 2014 by filing a brief in opposition (ECF No. 35), to which Defendants replied on November 6, 2014 (ECF No. 36). Accordingly, the matter has bene fully briefed and is ripe for disposition.

---

[3] The amended complaint also alleges, in conclusory statements, that Officers Hamlin and Wilson conspired to deprive Plaintiff of his constitutional rights to be free from excessive force and false arrest. (Am. Compl. ¶¶ 54-56, ECF No. 24). There are no well-pleaded facts supporting these conclusory statements, and therefore, they will not be credited as being true.

3

## B. STANDARD OF REVIEW

Recently, our Court of Appeals aptly summarized the appropriate standard of review when considering a defendant's motion to dismiss for failure to state a claim under Rule 12(b)(6) as follows:

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler* [*v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)] (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir.2013).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). Additionally, while "[t]he District Court must accept the complaint's well-pleaded facts as true, [it] may disregard any legal conclusions." *Fowler*, 578 F.3d at 210. (citing *Iqbal*, 556 U.S. at 663). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In addition to the complaint itself, the Court may consider "exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Inds., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). "In considering external yet undisputably relevant and authentic documents, the court need not covert the motion to dismiss into a motion for summary judgment." *Reginella Const. Co., Ltd. v. Travelers Cas. And Sur. Co. of America*, 949 F.Supp.2d

599, 609 (W.D.Pa. 2013) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

### C. DISCUSSION

#### 1. Section 1983 Claims Generally

"Title 42 U.S.C. § 1983 is not a source of substantive rights but a vehicle for vindicating rights conferred by the U.S. Constitution or by federal statute." *Dibella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005) (citing *Baker v. McCollan*, 443 U.S. 137, 145 n. 3 (1979)). Accordingly, "[t]o establish a section 1983 civil rights claim, a plaintiff must demonstrate that the conduct complained of was committed by a person acting under state law and that the conduct deprived him of rights, privileges or immunities secured by the Constitution." *Piecknick v. Com. of Pa.*, 36 F.3d 1250, 1255-56 (3d Cir. 1994) (quoting *Carter v. City of Philadelphia*, 989 F.2d 117, 119 (3d Cir.1993)).

#### 2. Section 1983 Claims against the Officers

The amended complaint asserts excessive force and false arrest claims against Officers Hamlin and Wilson. Defendants do not move to dismiss these claims as they relate to Officer Hamlin, "agreeing that at least at the 12(b)(6) stage of the proceedings; there [are] sufficient allegations … to survive a Motion to Dismiss." (Def.s' Reply Br. at 1, ECF No. 36). With respect to Officer Wilson, however, Defendants assert the amended complaint is "devoid of any factual allegation to support an excessive force and false arrest claim." (Def.s' Br. in Supp. at 5, ECF No. 27).

Claims for excessive force and false arrest under § 1983 are both based on the Fourth Amendment's guarantee against unreasonable seizures of the person. *Groman v. Twp. Of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995); *Basile v. Twp. of Smith*, 752 F.Supp.2d 643, 650-1

(W.D.Pa. 2010). A police officer may be liable for excessive force under § 1983 if the amount of force used to effectuate an arrest is unreasonable, which is governed by an objective standard. *Groman*, 47 F.3d. at 633-34. Additionally, a police officer may be liable for false arrest under § 1983 if he arrests the plaintiff without probable cause. *Id.* at 634.

At this stage, Defendants have failed to carry their burden in establishing that the false arrest claim against Officer Wilson should be dismissed. Defendants provided no case law or specific argument to support dismissal of the false arrest claim. Moreover, after reviewing the amended complaint, the Court disagrees with Defendants that Plaintiff has failed allege facts to support a false arrest claim against Officer Wilson. Plaintiff has alleged that Officer Wilson was present at the scene, that Officer Wilson was involved in the arrest after Officer Hamlin handcuffed Plaintiff, including fabricating a story with Officer Hamlin in an effort to "cover up" their conduct, and that the criminal charges against Plaintiff were dismissed for lack of reasonable suspicion and lack of probable cause. *See* (Am. Compl. ¶¶ 13, 17, 27, 47-49, ECF No. 24). Therefore, this claim for false arrest against Officer Wilson should proceed, as Defendants have failed to meet their burden in establishing that it should be dismissed.

Regarding the excessive force claim, Defendants have also argued that the amended complaint lacks sufficient factual allegations to implicate Officer Wilson. (Def.s' Br. in Supp. at 5, ECF No. 27). Plaintiff counters that he has plausibly stated a claim against Officer Wilson for his failure to intervene in Officer Hamlin's alleged unconstitutional conduct. (Pl.'s Resp. Br. at 3-4, ECF No. 35). However, as Defendants point out in their reply to this argument, the amended complaint contains no factual allegations against Officer Wilson indicating that he had a realistic and reasonable opportunity to intervene in Officer Hamlin's use of force. (Def.s' Reply at 3, ECF No. 36).

"Courts have held that a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). A police officer is subject to liability under § 1983 if he "fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence." *Id.* (citations and quotation omitted). But a police officer can only be found liable for failing to intervene if there was a "realistic and reasonable opportunity to intervene." *Id.* at 651.

The amended complaint states that Officer Wilson arrived at the scene as back-up, but does not otherwise specify his location during this incident. (Am. Compl. ¶ 13, ECF No. 24). Plaintiff only avers that Officer Hamlin exited his vehicle and walked towards Plaintiff and his friend. (*Id.* at ¶¶ 13-14). No facts were pled to suggest that that Officer Wilson exited his vehicle or that he was near either Officer Hamlin or Plaintiff during this incident. Indeed, the Court cannot infer that Officer Wilson could have prevented Officer Hamlin's alleged excessive force based on the single factual allegation that Officer Wilson arrived at the scene in his car just before the alleged excessive force occurred. All other allegations in the amended complaint against Officer Wilson regarding this claim are either conclusory statements unsupported by facts, *see, e.g.,* (*id.* at ¶¶ 30, 44), or legal conclusions, which the Court may disregard. *See Fowler*, 578 F.3d at 210. As such, the amended complaint is lacking factual allegations for the Court to infer any wrongdoing on the part of Officer Wilson for failing to intervene during Officer Hamlin's alleged use of excessive force. Consequently, Defendants' motion to dismiss the excessive force claim as it pertains to Officer Wilson should be granted.

Nonetheless, Plaintiff should be given a chance to file a second amended complaint. "[I]n a civil rights case, a court must *sua sponte* allow a plaintiff leave to amend his or her

complaint unless it would be inequitable or futile to do so." *Basile,* 752 F.Supp.2d at 658; *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 251 (3d Cir. 2007). In this context, "'futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 243 (3d Cir. 2010). Plaintiff's original complaint was filed *pro se* (ECF No. 4), and he was given an opportunity to amend it after retaining counsel. (ECF Nos. 22-24). Therefore, this second opportunity to amend his complaint would not be inequitable under the circumstances. Additionally, because Plaintiff's brief argues that Officer Wilson did not intervene in the use of excessive force, he should be allowed to amend his complaint to reflect this, and such amendment, if properly supported by facts, would not be futile.[4]

**2. Section 1983 Claims against Wilkinsburg**

Defendants argue that Plaintiff did not sufficiently plead facts to support his failure to supervise, train, or discipline claims, and that he has only asserted liability under a theory of *respondeat superior*. (Def.s' Br. in Supp. at 5-6, ECF No. 27). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 690 (1978) (emphasis in original). Thus, in order for a plaintiff to prevail on a § 1983 claim against a municipality, he must "identify a municipal 'policy' or

---

[4] The Court notes that Defendants' assertion that "Plaintiff has not alleged that the officers communicated and worked collectively during the use of force" is irrelevant. *See* (Def.s' Reply Br. at 3, ECF No. 36). (citing *Shuey v. Schwab*, 2010 WL 479938, at *5 (M.D.Pa. 2010) ). The case cited by Defendants, *Shuey*, appropriately held that the alleged communication and collective action of the officers was *sufficient* to withstand a motion to dismiss the failure to intervene claim. 2010 WL 479938, at *5. It certainly did not state that communication and collective action are requirements for recovery. Indeed, a police officer can be found liable under § 1983 for failing to intervene without personally using excessive force or directing any other officer to do the same. *Baker v. Monroe Twp.*, 50 F.3d 1186 (3d Cir. 1995); *see also Smith*, 293 F.3d at 651 (interpreting *Baker* to apply all police officers irrespective of the offending officers' rank).

'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997); *see also Mulholland v. Gov't Cnty. of Berks, Pa*., 706 F.3d 227, 238 (3d Cir. 2013). "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (alterations in original). "A course of conduct is considered to be 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." *Id.* (alterations in original). Knowledge and acquiescence are also grounds for establishing a custom. *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996). Additionally, a municipality may face liability "if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes." *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.")).

"[I]nadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan Cnty.*, 520 U.S. at 410. "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011).

9

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train. *Id.* (citing *Bryan Cnty.*, 520 U.S. at 409). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*; *see also Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998) ("[A] failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate.").

Plaintiff alleges in the amended complaint that "Defendant Wilkinsburg failed to properly supervise and train its officers on the proper circumstances to use a Taser gun and/or the proper procedures as to how to use a Taser gun," which "has led to numerous unlawful use[s] of excessive force against citizens by members of that police force." (Am. Compl. ¶¶ 21-22, ECF No. 24). Plaintiff claims that "[d]espite officials of the Defendant Borough having knowledge of this problem, Defendant Wilkinsburg has failed to correct this deficiency." (*Id.* at ¶ 23). According to Plaintiff, these allegations "raise a reasonable expectation that discovery will reveal evidence that Defendant Wilkinsburg failed to train its officers on the use of Taser guns, and that this failure has led to constitutional deprivations of others as well as the Plaintiff and that Defendant Wilkinsburg acted with deliberate indifference towards the rights of the Plaintiff." (Pl.'s Resp. Br. at 6, ECF No. 35).

Wilkinsburg argues that these statements are insufficient to state a claim against it, however, the Court agrees with Plaintiff that he should be given the opportunity in discovery to

explore this claim. Plaintiff has sufficiently asserted an unlawful policy regarding the use of force in connection with Taser guns, and Dismissal of the Borough at this stage before allowing discovery on this claim would be premature. Accordingly, Defendants' motion to dismiss this claim should be denied.

### 3. Conspiracy Claim against Wilkinsburg

Defendants also move to dismiss the conspiracy claims in the amended complaint as they relate to Wilkinsburg. (Def.s' Br. in Supp. at 6-7, ECF No. 27). In response, Plaintiff clarifies that the conspiracy claims only relate to the officers, and not Wilkinsburg. (Pl.'s Resp. Br. at 2, 7, ECF No. 35). Therefore, this portion of Defendants' motion should be granted.

### 4. Conspiracy Claim against Officers Hamlin and Wilson

Though it is unclear, the amended complaint appears to assert that the officers engaged in two conspiracies: (1) conspiracy to deprive Plaintiff of his rights to be free from excessive force and false arrest (Am. Compl. ¶¶ 54-57, ECF No. 24); and (2) conspiracy to subsequently cover-up their alleged unlawful use of force and false arrest by charging Plaintiff and fabricating a story. (*Id.* at ¶¶ 26-29, 58). These conspiracy claims arise under the second portion of § 1985(2), which "guards against those obstructions of justice 'in any State or Territory' which have as their objects the denial of the equal protection of the laws." *Brawer v. Horowitz*, 535 F.2d 830, 839-40 (3d Cir. 1976). "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Brekenridge*, 403 U.S. 88, 101 (1971); *see also Brawer*, 535 F.2d at 840. Accordingly, to state a claim under the second part of § 1985(2), the plaintiff must allege class-based, invidiously

11

discriminatory animus. *Fetzer v. Cambria Cnty. Human Serv.*, 384 F.Supp.2d 813, 817 (W.D.Pa. 2005). Failure to do so results in dismissal of such claims. *Id.*

The amended complaint provides no facts that Officers Hamlin and Wilson agreed or had a meeting of the minds to use excessive force on Plaintiff. The only conversation alleged before the arrest is that Officer Hamlin merely called Officer Hamlin for back-up. (Am. Compl. ¶ 13, ECF No. 24). All of Plaintiff's other allegations in connection with the claim that the officers conspired to deprive him of his rights to be free from excessive force and false arrest are conclusory statements. Additionally, with regard to both of Plaintiff's conspiracy claims, he has failed to allege class-based, invidiously discriminatory animus. Contrary to Plaintiff's argument in his response brief, an allegation that the officers "injured the Plaintiff and deprived him of his civil rights and privileges in violation of 42 U.S.C. § 1985(2)" constitutes a legal conclusion, not a factual allegation. *See* (Pl.'s Resp. Br. at 9, ECF No. 35). Similarly, Plaintiff's many allegations that Defendants' actions deprived him of his equal protection or privileges and immunities under the laws are clearly legal conclusions. While the amended complaint does state that Plaintiff is an African-American male, (Am. Compl. ¶ 11, ECF No. 24), it does not provide any other supporting facts for the Court to draw an inference that the alleged agreements were motivated by the fact that he is an African-American.

Therefore, Defendants' motion to dismiss this claim should be granted. As Plaintiff has alternatively requested to amend his pleading to clarify that the conspiracy was motivated by Plaintiff's race, he should be given leave to file a second amended complaint because allowing amendment would not be futile.

### 5. Claim for Punitive Damages

Finally, Defendants move to dismiss the claims in the amended complaint for punitive damages against Wilkinsburg and the officers in their official capacities. (Def.s' Br. in Supp. at 9-10, ECF No. 27)(citing *Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981) and *Feingold* v. *Southeastern Pa. Transp. Auth.*, 517 A.2d 1270 (Pa. 1986)). Plaintiff concedes that he is not entitled to punitive damages against Wilkinsburg and the officers in their official capacities, and contends that the punitive damages claim is only applicable to the officers in their individual capacities. (Pl.'s Resp. Br. at 2, 10, ECF No. 35). Therefore, the Defendants' motion to dismiss the claims for punitive damages against Wilkinsburg and the officers in their official capacities should be granted.

### D.     CONCLUSION

Based on the foregoing, it is respectfully recommended that Defendants' motion to dismiss the amended complaint (ECF No. 24) be granted in part and denied in part. Specifically, as to the § 1983 claims against Officer Wilson, Defendants' motion to dismiss the false arrest claim should be denied, and their motion to dismiss the excessive force claim should be granted, with leave to amend. Defendants' motion to dismiss the § 1983 claims against Wilkinsburg should be denied. Defendants' motion to dismiss the conspiracy claims against Wilkinsburg and Officers Hamlin and Wilson should be granted, with leave to amend. And Defendants' motion to dismiss the claims for punitive damages against Wilkinsburg and Officers Hamlin and Wilson in their official capacities should be granted.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and the Local Rules for Magistrates, the parties have until March 27, 2015, to file objections to this report and

recommendation. Failure to file timely objections will constitute a waiver of any appellate rights. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).

Dated: <u>March 13, 2015.</u>  By the Court,

<u>s/ Cynthia Reed Eddy</u>
Cynthia Reed Eddy
United States Magistrate Judge


cc: Counsel of Record via CM-ECF